IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES EDWARD NALLS,                    )
      Petitioner,                    )
                        )
     v.                                    )
                        )    Civil Action No. 13-031
COMMONWEALTH OF                        )
PENNSYLVANIA, THE ATTORNEY             )    United States District Judge
GENERAL OF THE STATE OF                )    Arthur J. Schwab
PENNSYLVANIA,                          )
      Respondents.                  )    United States Magistrate Judge
                        )    Cynthia Reed Eddy


## REPORT AND RECOMMENDATION

**I.      Recommendation**

On January 18, 2013, Petitioner James Edward Nalls filed a timely pro se Petition Under

28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 4) seeking

relief from his conviction for murder of the third degree under 18 Pa.C.S. § 2502(c),[1] and

judgment of sentence of 20 to 40 years imprisonment imposed by the Court of Common Pleas of

Allegheny County on September 9, 2008, as affirmed by the Superior Court of Pennsylvania on

---

[1] In Pennsylvania, "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501. The degrees of murder are as follows:

> (a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

> (b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

> (c) Murder of the third degree.—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502.

direct appeal and on appeal from denial of post-conviction relief.

After careful review of Mr. Nalls' Petition and Motion for Relief (ECF No. 15) (which raises an additional ground for habeas relief), the Commonwealth's Answer (ECF No. 9), and the voluminous state court records (ECF Nos. 10-12), including several opinions by the Court of Common Pleas and by the Superior Court of Pennsylvania on direct appeal and on appeal from denial of post-conviction relief, and applying the deferential standard of review required under AEDPA, this Court should deny the section 2254 Petition for Writ of Habeas Corpus and should not issue a certificate of appealability.

## II.     Report

### A.     Factual Background

The facts of this case have been summarized extensively in the several opinions of the state courts. This Court will recite an abbreviated version of the underlying facts and circumstances sufficient to place Petitioner's various grounds for relief in context.

Petitioner and the victim, JoBeth Olson, began dating in the fall of 2005 when she was seventeen and a University of Pittsburgh student and he was approximately twenty three. The two moved in together, and Ms. Olson became pregnant to Mr. Nalls and gave birth to their daughter in October of 2006. Petitioner was not sexually exclusive, and he dated, and fathered babies with, several other women. His relationship with JoBeth Olson soon became stormy.

In August 5, 2006, Ms. Olson obtained a temporary Protection From Abuse ("PFA") Order. Ultimately, she withdrew her PFA petition through an attorney. Petitioner and Ms. Olson reconciled after this incident, but her relationship with Mr. Nalls deteriorated, and her friends and family became concerned for her well-being after witnessing bruises and verbal abuse.

On the evening of Friday, March 30, 2007, Ms. Olson went out with her long-time friend, Elizabeth Butler. At approximately 2:30 a.m. on March 31, 2007, Ms. Olson dropped Ms. Butler off at her residence. A few hours later, Ms. Olson called Butler, crying, and told her Petitioner had broken into her house, unscrewed a light bulb so she could not see, and assaulted her. Ms. Olson also called Tara Brickner-Brown and told her what happened. At one point during the assault, the victim told Ms. Brickner-Brown that Petitioner stepped on her throat and said, "bitch, I'll kill you." On Saturday, Ms. Bricker-Butler saw the victim who had a swollen lip.

In the evening of April 2, 2007, Ms. Olson drove herself and Petitioner in her gold minivan (which was equipped with a GPS) to Applebee's Restaurant in the West Mifflin section of Allegheny County. At 8:19 p.m., they entered the restaurant together, but after sharing an appetizer, they left abruptly. Two employees noticed the victim's demeanor had changed during the meal; she became quieter and stopped eating. Ms. Olson paid the bill at 9:18 p.m. and left.

A few minutes after the couple exited Applebee's, some employees noticed the victim's minivan in the woods and police cars in the parking lot. Two employees noticed Petitioner was wearing a different shirt than the one he had on in the restaurant.

Edward Knorr, who was driving by on his way to a Kinko's store, saw the victim's minivan drifting, with an African-American male in dark clothing leaning in through the passenger side door. The man got out and walked back towards Applebee's while the minivan continued to drift to the woods. When Knorr left Kinko's at 9:26 p.m., he noticed that the minivan had stopped against the hillside in a wooded area.

Dispatchers received a 911 call from Petitioner at 9:26 p.m., exclaiming "my girlfriend. Somebody just shot her." Asked by the dispatcher who shot her, Petitioner replied, "I don't know (inaudible). I see her van rolling everywhere." Later in the conversation, the dispatcher again

3

asked if Petitioner knew who shot the victim, and he again replied "no." However, Petitioner said that he saw a white four door car pull away. Petitioner also stated: "All I know, I met her there. I was leaving and I seen somebody and she was walking out to her van and somebody rode up to the van." Petitioner was crying.

An EMT arrived and went to the driver's side where he found the minivan windows up and the doors closed. The victim was slumped to the left in the driver's seat, unresponsive and not breathing. Petitioner told the EMT there had been a white car and they were shooting at him.

The victim died at the hospital from a single gunshot wound to the head that rendered her brain dead. The bullet entered her brain slightly forward and went straight through her skull. Her parents disconnected Ms. Olson from life support and donated her organs. Several bruises on her arms and legs were found which had been inflicted not more than three days prior to the date of her death.

In the immediate aftermath of the incident, Petitioner told several stories, none of which involved him having a gun, being in the vehicle when the victim was shot, or struggling with Ms. Olson for a gun. The first two stories he told to West Mifflin Police Officers were that when he exited Applebee's after eating with his friend, Ashley Merida, he saw a man standing next to the victim's minivan get into a white car and drive away. Petitioner watched the minivan drift away into the hillside. In the third story to one of the officers, Petitioner said he was with the victim in the restaurant, but she left to pick up their daughter, called him from the parking lot and said a man in a white car was bothering her. When Petitioner went outside, he saw a black man standing next to the van get into a white car and drive away, while the van drifted through the parking lot.

Finally, Petitioner talked to an Allegheny County Homicide Detective at the crime scene, and agreed to go to the West Homestead police station for an interview. When Petitioner arrived at the station, he requested to wash his hands, but agreed with the Detective's request to submit to a gunshot residue kit. While the Detective administered the test, Petitioner stated he had been shooting a gun earlier in the day at Anthony Arms gun shop in West Mifflin and he expected the test would detect gunshot residue, which it did. Petitioner explained he did not own a gun, but that he shot two different guns at Anthony Arms. The Detective noticed blood on Petitioner's clothing, boots, and gloves and he collected them, and the blood turned out to be Ms. Olson's.

In the interview, Petitioner stated he met the victim at Applebee's between 8:00 p.m. and 9:00 p.m., and that prior to her arrival, she called and told him a white car was following her. Minutes later, the victim arrived and they ate dinner, with no conflicts or problems while they ate. After the meal, he went outside to retrieve his gloves from the victim's van, went back into the restaurant and received a call from the victim about a white car following her again. Mr. Nalls went outside and saw her van exiting the parking lot with a white four-door Oldsmobile Cutlass with two to three people inside following her. The minivan appeared to be driving uncontrollably, so Petitioner chased it and found the victim, and called 911. Petitioner said he had no clue who shot the victim or why anyone would do so.

A surveillance video from the parking lot did not show a white sedan behind the minivan at the time of the incident, and also showed that Petitioner was wearing a different shirt than the one in the Applebee's surveillance video.

About forty feet from the minivan, a Hi-Point 9 millimeter semi-automatic pistol was found in the dirt, loaded with five rounds in the magazine and one in the chamber. A spent casing was found in the victim's purse, which matched the bullet that killed Ms. Olson. Both Petitioner's

and the victim's DNA were found on the hand grips, magazine release, and slide serrations. Gunshot residue was found on Petitioner's right palm and left palm, but no residue was found on the victim's hands. The muzzle of the firearm was one inch from the victim's head at the time of discharge.

The pistol was registered to Karla Encalada of Virginia, one of Petitioner's ex-girlfriends and the mother of one of his children. When Encalada moved out of their apartment, she let Petitioner keep her gun, and he took the pistol with him to Pittsburgh.

Further investigation revealed that Petitioner never went to Anthony Arms on April 2, 2007 as he told the Allegheny County Detective.

The GPS device from the minivan tracked its movements on April 2, 2007, including its last trip of the day to Applebee's at 8:26 p.m. arrival, leaving Applebee's at 9:23 p.m., and ending up across the road at 9:25 p.m. The top speed of the rolling van was 1.02 miles per hour.

On Wednesday, April 4, 2007 Petitioner disconnected the victim's Sprint cellular telephone. Petitioner was arrested and charged with murder on April 5, 2007.

Petitioner testified in his defense. Highlights of his testimony include the following: he admitted that after breaking up with Ms. Encalada, he brought her gun to Pittsburgh; he offered a more benign version of the incident that led to the PFA, and he denied assaulting Ms. Olson in the early morning hours of March 31, 2007.

Regarding the victim's death on April 2, 2007, Petitioner testified that the victim drove them in her van to Applebee's. While eating, a woman whom Petitioner had prior sexual relations with entered the restaurant and came over to their table, which upset Ms. Olson. Shortly thereafter, they asked for their food to be packaged for take-out, and the victim left the restaurant, walked to the right down the ramp, while Petitioner walked down the left to the steps.

Petitioner had left a pair of bicycle riding gloves on the passenger's seat of the van, and left his gun in the console in the back seat. He testified that Ms. Olson would not let him in the van, and he sat on the curb, but she pulled up next to him in the van, rolled down her window, threw Petitioner's gloves out of the car, and told him to get in the van or walk home. Petitioner picked up his gloves and, as he put his left foot in the van he saw the victim had his gun pointed at him. Petitioner "grabbed the gun and pushed it back . . . to get it out of her hands." As they struggled over the gun, he pulled it, and it went off . . . ."

When questioned how the gun got to the back of the victim's head, Petitioner replied: "I think we were struggling, and my initial force was back. I tried to get it back so it wouldn't discharge and hurt us. That obviously didn't happen. We had our hands on it, and we were struggling. I don't remember every position we were in during the struggle." After the gunshot, Petitioner got out of the van when it started rolling and called 911. Petitioner said he went back to the mini-van while talking to 911, found the gun and threw it out of the car.

Petitioner admitted he lied to the police because he panicked and felt that as soon as he told the West Mifflin police what happened, they would arrest him.

### B. Procedural Background

James Edward Nalls was charged in a Criminal Information with one count of criminal homicide. Following a jury trial at which he was represented by retained defense counsel, a jury of the Court of Common Pleas of Allegheny County returned a verdict of murder of the third degree on June 10, 2008. On September 9, 2008, the Court sentenced petitioner to a term of imprisonment of not less than 20 years nor more than 40 years, with credit for time served.

The trial judge appointed an assistant Allegheny County Public Defender to represent petitioner on appeal, who filed a Notice of Appeal to the Superior Court of Pennsylvania and a

Concise Statement of Errors Complained of on Appeal, which included the following matters: the trial Court erred in admitting prior bad acts pursuant to Pa.R.Evid. 404(b), i.e., two instances of Mr. Nalls' violent acts toward Ms. Olson; testimony about the March 31, 2007 incident was inadmissible hearsay; the Court erred in excluding City of Pittsburgh Police Officer Robert Swartzwelder from testifying as an expert witness to opine that the shooting was the result of an unintentional discharge of the gun; the evidence was insufficient to establish malice, a necessary element of murder of the third degree.

On April 14, 2009, the trial Court filed an Opinion rejecting each of these issues. Commonwealth Exhibit 19, (ECF No. 10-4). On March 16, 2010, Superior Court affirmed the trial Court in a 25 page Opinion thoroughly addressing each of the points raised on appeal. Commonwealth Exhibit 24, (ECF No. 11-1). Thereafter, petitioner filed a Petition for Allowance of Appeal in the Supreme Court of Pennsylvania asserting lower court error in admitting the severely prejudicial prior bad acts, and in prohibiting Petitioner from presenting the firearms expert. The Supreme Court denied the petition on September 15, 2010.

On November 4, 2010, Mr. Nalls filed a pro se Motion for Post-Conviction Collateral Relief, and the PCRA Court appointed another attorney to represent petitioner in the Pennsylvania post-conviction proceedings. On April 5, 2011, new counsel filed an Amended PCRA Petition which raised the following claims: whether trial counsel was ineffective in failure to preserve objections to the trial Court's denial of requested jury charges; and whether trial counsel was ineffective for failure to call a law enforcement witness who overheard Mr. Nalls talking to his mother from the crime scene about what happened. On June 21, 2011, the PCRA judge (who was the trial judge) filed a Notice of Intention to Dismiss the petition, to which Petitioner filed Objections.

On July 20, 2011, the PCRA Court dismissed the petition. On August 9, 2011, petitioner filed a pro se Notice of Appeal, his PCRA counsel was given permission to withdraw, and new counsel amended the Notice of Appeal on August 30, 2011. Following the Concise Statement of Errors Complained of on Appeal, the PCRA Court issued its Opinion on September 20, 2011, in which it rejected the claim that counsel was ineffective for failing to preserve an objection to the Court's refusal to charge the jury on voluntary manslaughter and homicide by misadventure, and in failing to call the officer as a witness to overhearing petitioner tell his mother on the night of the incident that "it was an accident." Commonwealth Exhibit 39, (ECF No. 12-1). The PCRA Court declined to address several other issues included in the Concise Statement because they had not been included in the Amended PCRA petition, and therefore had been waived.

On March 23, 2012, Superior Court affirmed. Commonwealth Exhibit 44, (ECF No. 12-7). In its Memorandum Opinion, that Court addressed the two claims decided by the PCRA Court, and the several other issues raised in the Concise Statement that the PCRA Court deemed to have been waived. Superior Court found the additional issues had been properly preserved by Petitioner's objections to the PCRA Court's Notice of Intention to Dismiss, but agreed with that Court's dictum that the issues were without merit. Thus, Superior Court affirmed the denial of PCRA relief. On April 18, 2012, petitioner filed a pro se Petition for Allowance of Appeal in the Supreme Court of Pennsylvania, which that Court denied on August 22, 2012.

Mr. Nalls' timely Petition for a Writ of Habeas Corpus raises the following four Grounds for Relief:

Ground One. "Petitioner was denied the right to a fair trial and full defense as provided by the due process clause of the United States Constitution when the defense could not introduce as expert to discuss the manners in which an accidental discharge of a firearm can occur."

Petitioner claims that the trial Court erred when he ruled that City of Pittsburgh Police Officer Robert Swartzwelder could not testify as an expert witness.

Ground Two.  "Petitioner was denied the right to a fair trial when two Commonwealth witnesses were permitted to testify to statements alleged to have been made by the decedent. These statements were inadmissible hearsay and denied Petitioner his right to confront witnesses as provided by the 6th Amendment to the United States Constitution."

Ground Three. "Petitioner was denied due process where the Petitioner's verdict is not sustained by sufficient evidence."

Ground Four. "Petitioner was denied a fair trial due to the failure of trial counsel to object to denied jury instructions and therefore Petitioner could not challenge the right to have the jury charge on voluntary manslaughter and/or homicide by misadventure despite there being evidence to support such charges."

Finally, in his filing of July 19, 2013, docketed generically as a Motion for Relief (ECF No. 15), Petitioner states that he has "noticed a few issues" in the four volumes of state court records submitted by the Commonwealth (ECF Nos. 9-12) which he "think[s] the court should be aware of and that [he] would like looked into if possible." Petitioner first asked a rhetorical question[2] regarding the notice required for imposition of a mandatory minimum sentence, and lodged a general complaint about the timing of the trial Court's appointment of the Office of Public Defender, impinging his ability to file post-trial motions. Petitioner does not suggest how either of these perceived deficiencies prejudiced him in any way, nor does he attempt to make an argument that might arguably qualify as a constitutional basis for habeas corpus relief. The Court will not address these vague concerns.

---

[2] "So how can I receive the mandatory with no notification for the charge I was found guilty of?" Petitioner's Motion for Relief (ECF No. 15), at ¶ 1.

The Court will, however, address one matter he raises with sufficient particularity to understand the potential prejudice (although the constitutional underpinning of the issue is, at best, dubious). Giving Petitioner the benefit of the doubt, this Court will construe the Motion for Relief as setting forth one additional cognizable ground for habeas relief:

Ground Five. "The biggest issue I've found is that there is a great ERROR in what I truly was sentenced to," because the trial/ PCRA Court's written opinions state that Petitioner was sentenced to "10 to 20 years imprisonment" for his conviction, rather than 20 to 40 years. Petitioner asserts that the Court intended the sentence of imprisonment to be 10 to 20 years, and suggests that the Court's minute clerk entered the higher sentence by mistake.

**III.     Standard of Review.**

**A.      AEDPA Standards for Reviewing State Court Adjudications.**

The petition is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").   Under this statute, habeas relief is only available on the grounds that the prisoner's convictions were obtained in violation of his federal constitutional rights.   28 U.S.C. § 2254(a).   Errors of state law are not cognizable. *See, e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *Real v. Shannon*, 600 F.3d 302, 309-10 (3d Cir. 2010) ("A federal court may re-examine a state court's interpretation of its own law only where this interpretation appears to be an obvious subterfuge to evade consideration of a federal issue.").

Thus, federal law requires this Court to defer to a state court's application of its own rules of evidence. *Estelle*, 502 U.S. at 67-68 (federal court on habeas review must not review state court rulings on admissibility of evidence under state law); *see also Homes v. South Carolina*, 547 U.S. 319, 324 (2006) ("'State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'"); *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules.").

The admission or exclusion of evidence is within the sound discretion of the trial court, *Scales v. United States*, 367 U.S. 203, 256 (1961), and such "discretionary rulings regarding the admissibility of evidence are . . . best left to the province of the trial judge." *Yohn v. Love*, 76 F.3d 508, 525 (3d Cir. 1996). Moreover, it is well-established that "evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial." *Bisaccia v. Attorney General of State of New Jersey*, 623 F.2d 307, 312 (3d Cir.), *cert. denied*, 449 U.S. 1042 (1980) (only when relevant probative evidence is "greatly outweighed" by prejudice to the accused does balancing of probative value against prejudicial effect result in error of constitutional dimensions). *See also Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting the "traditional reluctance to impose constitutional constraints" upon ordinary evidentiary rulings by state trial courts concerning the admissibility of evidence). To constitute a denial of fundamental fairness, the evidence admitted or not admitted "must be material in the sense of a crucial, critical, highly significant factor."); *Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) (citations omitted), *cert. denied*, 522 U.S. 1109 (1998) ("federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of

constitutional dimension."). *See also Snell v. Lockhart*, 14 F.3d 1289, 1299 (8th Cir.) (state court's evidentiary ruling denied due process where it was "so 'gross', . . . 'conspicuously prejudicial', . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process.") (citation omitted), *cert. denied*, 513 U.S. 960 (1994).

In describing the role of federal habeas proceedings, the United States Supreme Court, in *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence . . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). AEDPA does not "permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys." *Collins v. Sec'y of Pennsylvania Dept. of Corrections*, ___ F.3d ___, 2014 WL 341062, *13 (3d Cir. 2014) (quoting *Burt v. Titlow*, ___ U.S. ___, 134 S.Ct. 10, 13 (2013))

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Habeas relief is not available under AEDPA for any "claim that was adjudicated on the merits" in state court unless that adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or was founded on an "unreasonable determination of the facts." *Collins*, ___ F.3d at ___, 2014 WL 341062 at *11; 28 U.S.C. § 2254(d)(l)-(2). Thus, AEDPA circumscribes a federal court's review of a state prisoner's federal constitutional claim when the state court has adjudicated that claim on the merits.

"If a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*, quoting *Pinholster*, 131 S.Ct. at 1400 (footnote omitted). For the purposes of a section 2254(d), "a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009). When the state court has not adjudicated a claim on the merits, AEDPA's standard of review at section 2254(d) does not apply and the federal habeas court's review is *de novo*. *Id.* at 124.

Importantly, review under section 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398-1401 (2011) ("Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so. Provisions like §§ 2254(d)(1) and (e)(2)

ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'") (citation omitted).  *See also Roundtree v. Balicki*, 640 F.3d 530, 538 (3d Cir. 2011).  As the Court of Appeals for the Third Circuit explained, "[i]n light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record."  *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011).

The United States Supreme Court stressed the "highly deferential" review that the federal courts must accord state courts' decisions:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law."  *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.*, at 411, 120 S.Ct. 1495.  Rather, that application must be "objectively unreasonable."  *Id.,* at 409, 120 S.Ct. 1495.  This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review.  *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).  AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

*Renico v. Lett,* 559 U.S. 766, 773 (2010).

More recently, the Supreme Court elaborated on the level of deference due state courts' determinations:

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).

It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 786-87 (2011). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of United States Supreme Court precedent); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold"); *Wenerowicz*, 663 F.3d at 630 (quoting *Harrington*, 131 S.Ct. at 786) ("In determining whether a state court unreasonably applied federal law under 28 U.S.C. § 2254(d)(1), 'a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].'").

### B. Sixth Amendment – Strickland Standards.

The "clearly established Federal law" for AEDPA purposes in which to analyze a prisoner's claim of ineffective assistance of trial counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show that his counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 688. The law presumes that counsel was effective. *Id.* at 689. *Strickland* also requires the petitioner to demonstrate that he was prejudiced by his counsel's alleged deficient performance. This requires him to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Pennsylvania's standards for weighing the constitutional adequacy of counsel's representation are compatible with *Strickland*. In *Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987), the Pennsylvania Supreme Court articulated a three-prong test: specifically, a petitioner must show: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the result of the proceeding would have been different absent such error. Although Pennsylvania courts articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. *Jacobs v. Horn*, 395 F.3d 92, 106 (3d Cir. 2005) ("We have previously ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*.") (citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)); *Rompilla v. Horn*, 355 F.3d 233, 248 (3d Cir. 2004) (same), rev'd on other grounds sub nom., 545 U.S. 374 (2005); *Commonwealth v. Tedford*, 960 A.2d 1,

12 (Pa. 2008) (recognizing both Pennsylvania Supreme Court and Third Circuit Court of Appeals precedent deem the standard for ineffective assistance of counsel under Pennsylvania law to be equivalent to *Strickland* standard

"On habeas review, we are 'doubly deferential' in considering counsel's performance: the state court was obligated on post-conviction review to view that performance deferentially, and, under AEDPA, we must give wide deference to the state court's conclusions, disturbing them only if the state court unreasonably applied either of the prongs of *Strickland*." *Collins*, ___ F.3d at ___, 2014 WL 341062 at *13 (quoting *Titlow*, 134 S.Ct. at 13).

### C.      Exhaustion Requirement

AEDPA requires a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. 28 U.S.C. § 2254(b). To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state post-conviction proceedings, mandamus proceedings, or other available procedures for judicial review.  *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996); *Burkett v. Love*, 89 F.3d 135, 137 (3d Cir. 1996).  To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.  *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.  *Id.* at 260.

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it. *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.1989). The petitioner has the burden of establishing that exhaustion has been satisfied. *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1989); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).[3]

D.    **Procedural Default**

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. Claims deemed to have been exhausted because of a state procedural bar are deemed to have been procedurally defaulted, precluding a federal court from proceeding to address them further. In *Cone v. Bell*, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate

---

[3]. On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review expired prior to May 9, 2000. *Wenger v. Frank*, 266 F.3d 218, 226 (3d Cir. 2001).

to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Cone*, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Notwithstanding, habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts. *Kindler v. Horn*, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. *Id*. at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." *Banks v. Horn,* 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Amos v. Scott,* 61 F.3d 333, 342 (5th Cir. 1995)). A state rule is adequate to preclude federal habeas corpus review if it is applied by state courts in "the vast majority of cases." *Dugger v. Adams*, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. *Glass v. Vaughn*, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996). A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can

overcome the default, thereby allowing federal court review, if he or she can demonstrate either (1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law, or that (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### IV.    Application of Legal Standards.

### A.    Non-*Strickland* Issues

Four of petitioner's grounds for relief, or at least the underlying issues, have been adjudicated on their merits by the Pennsylvania courts. Initially, Respondents argue that Petitioner only raised the underlying issues in state court as state evidentiary, procedural or substantive criminal law issues, and not as federal constitutional claims. Therefore, these claims are all unexhausted. Because the federal constitutional claims would be procedurally barred on independent state grounds for failure to include them in his initial or amended PCRA petitions, the federal grounds were not fairly raised in state court, and so are not reviewable under section 2254.

The Court is inclined to agree with Respondents. Moreover, Petitioner offers no possible justification for the failure to raise the issues as federal constitutional claims in state court, nor would this Court's failure to consider the claims result in a "fundamental miscarriage of justice."

Out of an abundance of caution, however, the Court will assume, for sake of argument only, that Petitioner's grounds for relief were properly raised and preserved, and will address them on their merits. In doing so, this Court must defer to the state courts' resolution of the underlying claims unless their adjudication resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2). A writ of habeas corpus should issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Collins*, ___ F.3d at ___, 2014 WL 341062 at *11 (quoting *Harrington,* 131 S.Ct. at 786). "Under this highly deferential standard," the federal court will not surmise "whether the state court reached the best or even the correct result," but rather will determine only whether the state court's application of federal law was unreasonable. *Collins*, ___ F.3d at ___, 2014 WL 341062 at *11 (quoting *Richter*, 131 S.Ct. at 785).

**Ground One.** "Petitioner was denied the right to a fair trial and full defense as provided by the due process clause of the United States Constitution when the defense could not introduce as expert to discuss the manners in which an accidental discharge of a firearm can occur." Petitioner claims that the trial Court erred when he ruled that City of Pittsburgh Police Officer Robert Swartzwelder could not testify as an expert witness.

This claim has been adjudicated on its merits on direct appeal, by both the trial and the appellate courts. Accordingly, unless that adjudication either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or was founded on an "unreasonable determination of the facts" this Court must defer to the state courts. In Pennsylvania (as in most if not all jurisdictions, including federal jurisdiction), the admissibility of expert testimony is within the sound discretion of the trial judge. *Commonwealth v. Housman*, 986 A.2d 822, 838 (Pa. 2009) (admission of expert testimony is in discretion of trial court which will not be disturbed unless there is a clear abuse of discretion); *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa. Super. 2011).

The state Courts gave a number of reasons for excluding Officer Swartzwelder's report and testimony based on state evidentiary law, including that the Officer's opinion about causes of accidental discharges of a firearm were based almost entirely on Petitioner's subjective statements about what happened, not upon ballistics or other forensic scientific testing or analysis of physical evidence and, moreover, Officer Swartzwelder could only state that several such causes of accidental discharge "were possible" in this case, not that it was his opinion to a reasonable degree of medical certainty that the shooting was accidental. Superior Court stated that "the expert's proposed testimony merely served to bolster [Petitioner's] testimony regarding the accidental nature of the shooting [and further], the expert concluded three out of four causes of unintentional discharge 'were possible.' This conclusion, based on mere possibilities, is not competent evidence." Superior Court Memorandum Opinion of March 10, 2010, Commonwealth Exhibit 24, (ECF No. 11-1) at 21.

Giving proper deference to the state courts' evidentiary rulings, as we must, *Estelle*, 502 U.S. at 67-68, the record before this Court shows that the adjudication of this issue is not contrary to nor is it an unreasonable application of clearly established federal law, and it was founded on a reasonable determination of the facts. Petitioner does not even offer any United States Supreme Court decisions as contrary to the Pennsylvania courts' decision, and is not entitled to habeas relief on this ground.

**Ground Two.** "Petitioner was denied the right to a fair trial when two Commonwealth witnesses were permitted to testify to statements alleged to have been made by the decedent. These statements were inadmissible hearsay and denied Petitioner his right to confront witnesses as provided by the 6th Amendment to the United States Constitution."

This issue must suffer a similar fate. The prior bad acts were integral and important pieces of evidence tending to show petitioner's malice and ill-will for the victim, and the Pennsylvania courts thoroughly analyzed the admissibility of these prior incidents pursuant to the Pennsylvania Rules of Evidence and controlling precedent. Giving proper deference to the state courts' evidentiary rulings, as we must, *Estelle*, 502 U.S. at 67-68, the record before this Court shows that the adjudication of this issue is not contrary to nor is it an unreasonable application of clearly established federal law, and it was founded on a reasonable determination of the facts. Moreover, again Petitioner does not point to any United States Supreme Court decisions contradicting the Pennsylvania courts' decision. Petitioner is not entitled to habeas relief on Ground Two.

**Ground Three.** "Petitioner was denied due process where the Petitioner's verdict is not sustained by sufficient evidence." In particular, Petitioner challenges the sufficiency of the evidence to prove malice, and essential element of murder of the third degree. See *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) ("elements of third degree murder absolutely include an intentional act, but not an act defined by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death . . . .").

A state prisoner's section 2254 challenge to the sufficiency of the evidence supporting his convictions is reviewed in the light most favorable to the Commonwealth, and the federal courts will resolve conflicting inferences in the Commonwealth's favor. *Eley v. Erickson*, 712 F.3d 837, 842 n.2 (3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 and 326 (1979)). Thus, this Court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Eley*, 712 F.3d at 847 (quoting *Jackson*, 443 U.S. at 319). After careful review of the evidence adduced by the Commonwealth on the state court record, as recited above, this Court does not hesitate to find that any reasonable trier of fact could have disbelieved Petitioner's testimony about an accidental shooting and found that petitioner acted with malice when he shot and killed Ms. Olson. Ground Three is without merit.

**Ground Five.** "The biggest issue I've found is that there is a great ERROR in what I truly was sentenced to," because the trial and PCRA Court's two written opinions state that Petitioner was sentenced to 10 to 20 years of imprisonment rather than 20 to 40 years. Petitioner asserts that the Court's minute clerk inadvertently entered the higher sentence by mistake. This issue has not been previously raised, and therefore is unexhausted. Petitioner most likely could not raise it in state court, however, because he failed to raise it in his initial or amended PCRA Petition, and so the claim would be procedurally defaulted.

Regardless, the claim is unfounded factually, and is directly contradicted by the record as a whole. Although the Court did state "10 to 20" in lieu of "20 to 40," no one was confused by this misstatement, and petitioner did not "notice" the discrepancy until recently. Indeed, all of petitioner's previous attorneys and the appellate courts have proceeded on the assumption that the Court intended and imposed a term of imprisonment of 20 to 40 years sentence, as is confirmed by the sentencing transcript, Bates No. T08-1650 at 45-46 and the judgment of sentence entered on the state court docket, and as reflected in briefs filed in the Superior and Supreme Courts of Pennsylvania.

*Strickland* **Issue**

**Ground Four.** "Petitioner was denied a fair trial due to the failure of trial counsel to object to denied jury instructions and therefore Petitioner could not challenge the right to have the jury charge on voluntary manslaughter and/or homicide by misadventure despite there being evidence to support such charges." Trial counsel had requested such instructions, but failed to preserve an objection to the trial Court's refusal to so instruct the jury.

In its Memorandum Opinion, the Pennsylvania Superior Court outlined the elements of a claim of ineffective assistance of counsel – failure to raise a meritorious claim, lack of strategic reason, and prejudice[4] – applying the *Pierce* three prong test which, as discussed above, equates to the *Strickland* analysis. Therefore, the Pennsylvania Superior Court applied the correct legal standard, and that is sufficient to satisfy review under the "contrary to" clause of section 2254(d)(1). *Williams*, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."); *Jacobs*, 395 F.3d at 106; *Werts*, 228 F.3d at 202-04.

Thus, this Court must ask whether the Pennsylvania Courts' adjudication of Petitioner's ineffective assistance claim was an "unreasonable application of" *Strickland* or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[4]     Both *Strickland* and *Pierce* require that the petitioner demonstrate a "reasonable probability" of a different outcome. The United States Supreme Court has counseled that a federal habeas court should not be quick to assume that the state court applied the wrong law, even if the state court was imprecise in language it used in evaluating a claim. *Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2002) (per curiam) (finding the Court of Appeals for the Ninth Circuit's "readiness to attribute error [to the state court] is inconsistent with the presumption that state courts know and follow the law," and is "also incompatible with § 2254(d)'s 'highly deferential standard for evaluating state-court rulings,' which demands that state court decisions be given the benefit of the doubt."); *see also Williams v. Beard*, 637 F.3d 195, 233 n.30 (3d Cir. 2011).

presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In conducting this analysis, the federal courts are mindful that the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 132 S.Ct. at 785.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*, 466 U.S.] at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420.

*Harrington*, 131 S.Ct. at 788. *See also Knowles*, 129 S.Ct. at 1420 ("[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.") (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")).

Voluntary manslaughter may be an appropriate jury charge where the defendant acted "under a sudden and intense passion resulting from serious provocation," 18 Pa.C.S. § 2503(a), and homicide by misadventure may be appropriately charged if the slayer was engaged in a lawful act unaccompanied by any criminally careless or reckless conduct. *Commonwealth v. Legg*, 711 A.2d 430, 432 n.2 (Pa. 1998). The trial and appellate courts both found that the evidence did not support instructions on homicide by misadventure or voluntary manslaughter as those offenses are defined in Pennsylvania. This finding was based upon Pennsylvania law and

the state courts' analysis of the record evidence presented, and therefore is entitled to great deference.

Accordingly, the Pennsylvania Courts' adjudication of Petitioner's ineffective assistance claims was neither an "unreasonable application of" *Strickland* nor did it "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Under both *Strickland* and *Pierce*, an objection to the failure to charge on homicide by misadventure and voluntary manslaughter would not have been sustained, and counsel cannot be deemed ineffective for failure to pursue an objection to lack of a jury instruction having no chance of success.

### III.     Conclusion.

For all of the foregoing reasons, I respectfully recommend that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 4) be denied.

A district court issuing a final order denying a section 2254 petition must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Habeas relief is not available where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 131 S.Ct. at 786-87. Consequently, the Court should also decline to issue a certificate of appealability because petitioner has failed to make a substantial showing of the denial of a constitutional right.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, Plaintiff is allowed until **March 3, 2014**, to file objections to this Report and Recommendation. Failure to file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     James Edward Nalls
        HT0264
        SCI Somerset
        1600 Walters Mill Road
        Somerset, PA 15510

        all counsel of record